Richard F. FIELDING, Plaintiff,

v.

INDEX FUTURES GROUP,
INC., Defendant.

No. 88 Civ. 3512 (RJW).

United States District Court,
S.D. New York.

June 7, 1988.

Kornstein, Veisz & Wexler, New York City, for plaintiff.

Newman, Tannenbaum, Helpern, Syracuse & Hirschtritt, New York City, for defendant.

## MEMORANDUM DECISION

ROBERT J. WARD, District Judge.

Plaintiff Richard F. Fielding moves for an order pursuant to Rule 65, Fed.R.Civ.P. and Section 14 of the Commodity Exchange Act, 7 U.S.C. § 18, ("CEA") preliminarily enjoining defendant Index Futures Group, Inc. ("IFG") from pursuing relief in a proceeding currently pending before an arbitration panel of the New York Futures Exchange and preliminarily staying such arbitration proceeding. For the reasons that follow, plaintiff's motion is denied.

### FACTS

Plaintiff, on June 30, 1987, entered into a written customer agreement ("Customer Agreement") with IFG to open a number of futures and options accounts. Although the Customer Agreement had an optional

arbitration clause, plaintiff did not sign that clause. On October 19, 1987, the day of the stock market crash, plaintiff alleges that IFG refused to follow his instructions, completely took over his accounts, and made hundreds of trades without plaintiff's knowledge or approval. IFG claims that on October 20, 1987, plaintiff's account had a deficit of $1,450,000.

On November 2, 1987, plaintiff received from the New York Futures Exchange a copy of a statement of claim in arbitration by IFG seeking $1,700,000 in alleged trading losses. After receiving defendant's demand for arbitration, plaintiff immediately started a proceeding in New York State Supreme Court to stay the arbitration on the grounds that he had not agreed to subject himself to arbitration and that the IFG had waived any rights to arbitration by suing him in Maryland State Court. In February 1988, the state court denied plaintiff's request for a stay of arbitration, finding that as a member of the New York Futures Exchange, plaintiff had implicitly consented to arbitration. Plaintiff is presently appealing that decision and a stay pending appeal has been denied.

On April 29, 1988, the first arbitration session was held. Because plaintiff objected to the jurisdiction of the arbitration panel of the New York Futures Exchange, he did not assert any counterclaims to defendant's claim. The second arbitration session was held on May 18, 1988. On that day, plaintiff commenced a reparation proceeding pursuant to 7 U.S.C. § 18 and 17 C.F.R. § 12.1, by filing a complaint with the Commodity Futures Trading Commission ("CFTC") seeking $3,000,000 in damages for violations of the CEA and CFTC rules and regulations. Although plaintiff requested that the arbitration panel stay its proceedings because of the filing of the CFTC proceeding, the panel refused.

On May 18, 1988, plaintiff moved by order to show cause to stay the arbitration, claiming that the CFTC reparations proceeding pre-empts the arbitration proceeding. On that same day, the parties came before the Court, agreed to brief the issues, and stipulated that the Court could decide the matter on submission. Final papers were received by the Court on June 4, 1988.

## DISCUSSION

### I. *Requirements for an Injunction*

Preliminary injunctive relief will be granted only upon "a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Roso–Lino Beverage Distributors v. Coca–Cola Bottling Co.*, 749 F.2d 124, 125 (2d Cir.1984) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979)).

### A. *Success on the Merits or Sufficiently Serious Questions Going to the Merits and the Balance of Hardships*

▬ Initially, plaintiff argues that the reparation procedure established in the Commodity Exchange Act pre-empts resolution of a dispute by arbitration. This argument is entirely lacking in merit. "All of the circuits that have addressed the question have held that nothing in the CEA or its legislative history forbids the arbitration of claims arising under the CEA where provided by contract." *Gans v. Merrill Lynch Futures, Inc.*, 814 F.2d 493, 495 (8th Cir.1987). In fact, the Act expresses a policy in favor of non-judicial dispute resolution by providing for reparations proceedings before the CFTC. *Id.* Moreover, the Commission has sanctioned arbitration and promulgated regulations to assure that arbitration agreements are fair and customers are making informed decisions about waiving their right to litigation. *Id.* As the Eighth Circuit concluded in *Gans*, " '[w]e are unable to find a congressional signal that arbitration ought not be available in Commodity Exchange Act cases where the parties have previously entered into a valid arbitration agreement.' " *Id.* (quoting *Smoky Greenhaw Cotton v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 720 F.2d 1446, 1449 (5th Cir.1983)).

An additional indication that arbitration proceedings are a favored means of settling disputes in this area is found in the regulations accompanying the CEA. Under 17 C.F.R. § 12.24, the CFTC refuses jurisdiction over an action in which a parallel proceeding was previously commenced. A parallel arbitration proceeding is defined in the regulation as follows:

> For purposes of this section, a parallel proceeding shall include—
>
> (1) An arbitration proceeding or civil court proceeding, involving one or more of the respondents as a party, which is pending at the time the reparation complaint is filed and involves claims or counterclaims that are based on the same set of facts which serve as a basis for all of the claims in the reparations complaint, and which either:
>
> (i) Was commenced at the instance of the complainant in reparations; or
>
> (ii) Involves counterclaims by the complainant in reparations alleging violations of the Commodity Exchange Act, or any regulation or order issued thereunder, or
>
> (iii) Is governed by a compulsory counterclaim rule of federal court procedure which required the complainant in reparations to assert all of his claims (including those based on alleged violations of the Commodity Exchange Act, and any regulation or order issued thereunder) as counterclaims in that proceeding;
>
> . . .

17 C.F.R. § 12.24.

Plaintiff argues that because the arbitration proceeding is not a parallel proceeding within the meaning of the regulation, it should be stayed. Plaintiff avers that the arbitration proceeding does not fall into any the three categories listed above. Specifically, plaintiff claims that arbitration was commenced by IFG, not the plaintiff-complainant in the reparation proceeding; plaintiff-complainant has not asserted counterclaims in the arbitration proceeding; and the compulsory counterclaim rule of the federal rules of civil procedure does not apply to an arbitration proceeding.

■ ▇ The Court disagrees with plaintiff's view, finding both that the arbitration at issue is most likely a parallel proceeding within the meaning of the regulation and that, even if it were not such a proceeding, there is no reason for the Court to stay the arbitration because plaintiff is nonetheless obligated to arbitrate the dispute by virtue of his membership in the New York Futures Exchange.

The CFTC has expressed the view "that an arbitration proceeding otherwise satisfying § 12.24(a)(1) commenced pursuant to an enforceable pre- or post-dispute agreement shall be deemed a parallel proceeding 'commenced at the instance of the complainant in reparations' within the meaning of § 12.24(a)(1)(i), *regardless of whether the complainant in reparations actually took the initiative in commencing the arbitration proceeding.*" Final Rules Relating to Reparations, 50 Fed.Reg. 6602, 6619 (1984) (emphasis added). The instant arbitration proceeding satisfies the requirements of § 12.24(a)(1) because it involves the same parties as those in the reparation complaint, the arbitration was pending at the time the reparation complaint was brought, and the claims brought by defendant in the arbitration are based on the same set of facts which serve as a basis for plaintiff's complaint in the reparation proceeding.

Thus, the only question at issue is whether the arbitration was commenced pursuant to a valid and enforceable arbitration agreement. Although this very issue is presently before the Appellate Division, the Court is compelled to address it because it is crucial to the issue of success on the merits.

The Court believes that, in light of recent precedent within this Circuit, plaintiff has virtually no chance of success on the merits. Plaintiff is not arbitrating pursuant to arbitration provisions in the Customer Agreement, which he clearly did not sign, but rather is in arbitration pursuant to his independent obligations as a member of the New York Futures Exchange. It is undisputed that both plaintiff and defendant were members of the New York Futures Exchange at all relevant times. The New York Futures Exchange Arbitration Rules

provide that "[a]ny controversy between members ... shall, in the discretion of the Arbitration Director, be settled by arbitration under the Rules of the Exchange if any member involved in such controversy so elects." Rule 602(b). Although this broad arbitration provision could have been validly modified by a clear expression of intention in a private agreement between the parties, *see Creative Securities Corp. v. Bear Stearns & Co.,* 671 F.Supp. 961, 967 (S.D.N.Y.1987), *aff'd without opinion,* 847 F.2d 834 (2d Cir.1988), no such unambiguous expression of intent exists. The Customer Agreement's arbitration provisions were not altered by plaintiff and, thus, plaintiff's failure to either modify or to accept the Customer Agreement's arbitration provisions cannot be considered a clear indication of both parties' intent to alter their general obligation to arbitrate all disputes with other members of the New York Futures Exchange. *See Id.* at 966–968 (absent clear intent to modify general arbitration clause provided by membership in an organization, party is bound to arbitrate all disputes that fall within that clause). This result is consistent with the strong federal policy favoring arbitration that requires that any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration. *See Id.* at 965.

Inasmuch as this dispute was properly submitted to arbitration under the auspices of the New York Futures Exchange and the arbitration was commenced prior to the reparation proceeding, it is likely that the Director of the Office of CFTC will consider the arbitration a pending parallel proceeding as defined in 17 C.F.R. § 12.24(1)(i) and will consequently dismiss plaintiff's reparation proceeding, without prejudice.

Having found that plaintiff is involved in a pending arbitration pursuant to a valid arbitration clause, the Court holds that there is neither a likelihood of success on the merits nor a substantial question going to the merits as would satisfy either of these requirements for a preliminary injunction.

### B. *Irreparable Injury*

 Plaintiff has also failed to satisfy the irreparable injury requirement for an injunction. Plaintiff has shown no irreparable injury he will suffer if he is forced to participate in an arbitration proceeding in which, as a member of the New York Futures Association, he is contractually bound to participate. The Court notes that it appears that plaintiff can raise by way of counterclaim in the arbitration any claims that he has against IFG.

### CONCLUSION

Inasmuch as plaintiff has neither demonstrated irreparable injury nor raised a substantial question going to the merits or shown a likelihood of success on the merits, he has failed to satisfy the requirements for a preliminary injunction in this Circuit. Accordingly, plaintiff's motion for a stay of the pending arbitration proceeding is denied.

It is so ordered.