

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## NUMBER 13-12-00265-CV

**FRONTERA GENERATION LIMITED PARTNERSHIP,**     **Appellant,**

**v.**

**MISSION PIPELINE COMPANY**
**N/K/A MISSION PIPELINE, LLC,**     **Appellee.**

### On appeal from the 275th District Court
### of Hidalgo County, Texas.

## NUMBER 13-12-00321-CV

## IN RE FRONTERA GENERATION LIMITED PARTNERSHIP

### On Petition for Writ of Mandamus.

## OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Opinion by Chief Justice Valdez

By appeal and original proceeding, Frontera Generation Limited Partnership ("Frontera") seeks to set aside a temporary injunction that was entered pending arbitration under the Federal Arbitration Act ("FAA") that Frontera contends "effectively" compels it to arbitrate.[1] These two matters arise from a dispute between Frontera and Mission Pipeline Company n/k/a Mission Pipeline, LLC ("Mission") regarding the operation of a series of pipelines and related equipment which transport natural gas to the Frontera natural gas fueled electric generating facility in Hidalgo County, Texas. Because these two matters are related and involve substantially similar facts and issues, we issue a single opinion disposing of both matters in the interests of judicial economy. *See e.g., Holmes v. Beatty*, 290 S.W.3d 852, 854 (Tex. 2009). As stated herein, we affirm the injunction in cause number 13-12-00265-CV, and we deny the petition for writ of mandamus in cause number 13-12-00321-CV.

## I. BACKGROUND

In 1999, Frontera built a natural gas burning electric generating facility in Hidalgo County, Texas. When the Frontera facility was constructed, there were no natural gas pipelines connecting the facility to existing interstate pipelines, such as the Tennessee Gas Pipeline ("TGP") or the Texas Eastern Pipeline ("TETCO"). Frontera entered into an agreement with Mission to acquire, construct, and operate a series of pipelines and related equipment to transport natural gas (the "Mission system") to the Frontera facility from the interstate pipelines of upstream providers, including TGP and TETCO. The transaction was accomplished with two contracts, a Gas Pipeline and Interconnect, Construction, Sale, and Firm Capacity Agreement (the "Firm Capacity Agreement") and

---

[1] In the original proceeding filed in appellate cause number 13-12-00321-CV, Frontera contends that the trial court abused its discretion "by entering an order that effectively compels Frontera . . . to arbitration," and in the appeal filed in appellate cause number 13-12-00265-CV, Frontera contends that the trial court erred by entering a temporary injunction pending arbitration under the FAA.

a Firm Transportation and Capacity Agreement (the "Transportation Agreement"), along with a penumbra of agreements related to financing the transaction. Frontera financed the construction of the system by advancing $5,067,078.26 to Mission, and in exchange, Mission executed a Demand Note payable to Frontera in the event of a default. The Demand Note is secured by an Amended and Restated Deed of Trust, Financing Statement, Fixture Filing and Security Agreement with Assignment of Rents ("Deed of Trust") and a Security Agreement and Assignment of Rights and General Pledge ("Security Agreement") that gives Frontera a security interest in Mission's assets. Additionally, Mission's shareholders entered into a Stock Pledge Agreement in which they granted Frontera a security interest in their shares of stock and equity in Mission.

The Firm Capacity Agreement and the Transportation Agreement each include an identical arbitration clause:

> Any dispute relating to this Agreement shall be resolved by binding, self-administered arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("AAA") and all such proceedings shall be subject to the Federal Arbitration Act. A single arbitrator shall be selected under the expedited rules of the AAA. ONLY DAMAGES ALLOWED PURSUANT TO THIS AGREEMENT MAY BE AWARDED AND THE ARBITRATOR SHALL HAVE NO AUTHORITY TO AWARD TREBLE, EXEMPLARY OR PUNITIVE DAMAGES OF ANY TYPE UNDER ANY CIRCUMSTANCES REGARDLESS OF WHETHER SUCH DAMAGES MAY BE AVAILABLE UNDER TEXAS LAW.

In approximately 2006, Frontera stopped using the Mission System due to concerns over the quality of the gas being provided by TGP and TETCO and, instead, purchased gas from another source. In 2011, Frontera received notice that its primary source of gas would be out of service for several days and asked TGP to supply gas through the Mission system. TGP stated that it could not deliver gas through the

system because there was no longer an active meter at the interconnect. On April 13, 2011, Frontera notified Mission that it could not obtain gas volumes through the system. Over the next several months, the parties discussed the situation and disagreed regarding the cause, fault, and consequences. Frontera contended that Mission was required to provide firm capacity under the agreements and that Mission had the obligation under the agreements to keep the Mission System ready and available if Frontera chose to use it. In contrast, Mission contended that Frontera had abandoned the Mission System and that any alleged problems with the Mission system were caused by Frontera's five-year abandonment of the system and caused by TETCO and TGP's independent actions of deactivating the lines and removing their equipment.

On February 10, 2012, Frontera sent Mission a demand for payment and a notice of foreclosure sale for Mission's assets. On March 1, 2012, Mission obtained a temporary restraining order. On March 2, 2012, Mission filed its original complaint in arbitration. On April 13, 2012, the trial court entered a temporary injunction prohibiting Frontera from, among other things, attempting a foreclosure sale of Mission's assets. The injunction provides in relevant part:

> The Court has examined the pleadings and evidence submitted by Plaintiff and Defendant and the Court has found that it is likely that Plaintiff will prevail on the merits of its claims against Defendant and is entitled to equitable relief. The court finds that Plaintiff has a probable right of recovery at the arbitration of its claims and defenses against Frontera for declaratory relief and/or breach of contract.
>
> The Court further finds that Plaintiff will suffer imminent and irreparable injury, specifically loss and/or damage to title and possession of its property, assets, collateral and stock unless Defendant is immediately enjoined from proceeding, directly or indirectly with (i) the Foreclosure Sale as provided and described in Frontera's February 10, 2012 correspondence to Plaintiff; (ii) the Disposition of Collateral as provided and described in Frontera's February 10, 2012 correspondence to Plaintiff; (iii) any other sale, foreclosure, action or relief provided and

4

described in Frontera's February 10, 2012 correspondence to Plaintiff; and (iv) any attempt to enforce any remedies provided in the Firm Capacity Agreement, the Transportation Agreement and the Collateral Documents (including the Deed of Trust, Demand Note, Security Agreement and Stock Pledge Agreement). The Court further finds that if Plaintiff's application for temporary injunction is not granted, and Defendant is not enjoined from proceeding with the Foreclosure Sale and/or disposition of Plaintiff's collateral, stock and assets, Plaintiff will have no adequate remedy at law as Plaintiff will lose title and possession of its collateral, stock, and assets.

The Court further finds that the harm Plaintiff will suffer if its application for temporary injunction is not granted far outweighs any hardship that may result to Defendant. The Court further finds that the relief Plaintiff seeks is not adverse to the public interest in that Plaintiff is merely seeking to maintain the status quo pending arbitration of its claims and defenses against Defendant. Accordingly, the Court finds that Plaintiff is entitled to a temporary injunction.

IT IS THEREFORE ORDERED that the clerk issue a writ of injunction enjoining Defendant, and Defendant is immediately enjoined, from directly or indirectly, for itself or on behalf of or in conjunction with any other person, trustee, company, partnership, corporation or business of whatever nature, proceeding with:

a. The Foreclosure Sale as provided and described in Frontera's February 10, 2012 correspondence to Plaintiff . . .

b. The Disposition of Collateral as provided and described in Frontera's February 10, 2012 correspondence to Plaintiff . . .

c. Any other sale, foreclosure, action or relief provided and described in Frontera's February 10, 2012 correspondence to Plaintiff . . .

d. Any attempt to enforce any remedies provided in the Firm Capacity Agreement, the Transportation Agreement and the Collateral Documents (including the Deed of Trust, Demand Note, Security Agreement and Stock Pledge Agreement); and

e. Engaging in any transaction that would affect title or possession to the property, assets, collateral and stock of Plaintiff.

The temporary injunction set the case for trial on the merits and ordered that "this case is stayed pending the outcome of the arbitration pending before the American Arbitration Association and styled as Case Number: 50 459 T 00164 12, *Mission Pipeline Company v. Frontera Generation Limited Partnership*." This appeal and original proceeding ensued.

## II. APPEAL IN CAUSE NO. 13-12-00265-CV

By appeal, Frontera raises three issues, contending the trial court abused its discretion: (1) by entering a temporary injunction pending arbitration under the FAA; (2) by entering a temporary injunction based on legally and factually insufficient evidence of a probable right of recovery; and (3) by entering a temporary injunction based on legally and factually insufficient evidence of a probable, imminent, and irreparable injury.

### A. STANDARD OF REVIEW

In general, a temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993). The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204. The status quo is "the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (quoting *Janus Films, Inc. v. City of Fort Worth*, 163 Tex. 616, 358 S.W.2d 589, 589 (1962) (per curiam)). To obtain a temporary injunction, the applicant must ordinarily plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204. The applicant is not required to establish that he will prevail on final trial; rather, the only

question before the trial court is whether the applicant is entitled to preservation of the status quo pending trial on the merits. *Walling*, 863 S.W.2d at 58.

In an interlocutory appeal from a temporary injunction, we do not review the merits of the applicant's case. *See Davis v. Huey*, 571 S.W.2d 859, 861 (Tex. 1978); *Menna v. Romero*, 48 S.W.3d 247, 252 (Tex. App.—San Antonio 2001, pet. dism'd w.o.j.). Rather, we limit our review to whether there has been a clear abuse of discretion in issuing the temporary relief. *Davis*, 571 S.W.2d at 861; *Menna*, 48 S.W.3d at 252. We may not substitute our judgment for that of the trial court; instead, we merely determine whether the court's action was so arbitrary as to exceed the bounds of reasonable discretion. *Davis*, 571 S.W.2d at 861; *Menna*, 48 S.W.3d at 252. An abuse of discretion does not exist where the trial court bases its decision on conflicting evidence. *Davis*, 571 S.W.2d at 861.

### B. PENDING ARBITRATION

By its first issue, Frontera contends the trial court abused its discretion by entering a temporary injunction pending arbitration under the FAA. The Fifth Circuit has held that a district court may issue injunctive relief to protect the status quo pending resolution of a motion to compel arbitration. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). But the Fifth Circuit has not yet addressed "whether the commands of the [FAA] require that a federal court immediately divest itself of any power to act to maintain the status quo once it decides that the case before it is arbitrable." *Id.* at 594 (quoting *RGI, Inc. v. Tucker & Assocs., Inc.*, 858 F.2d 227, 228–29 (5th Cir. 1988)). In *RGI, Inc. v. Tucker & Associates, Inc.*, 858 F.2d 227, 228 (5th Cir. 1988), the Fifth Circuit noted that the other federal circuits were split on this issue. *Id.* The Fifth Circuit concluded that its resolution of the differences between the two views was unnecessary

7

because the circuits opposing injunctive relief left open the possibility of granting injunctive relief where the parties had contemplated its use beforehand. *Id.* at 230. The Fifth Circuit noted that the agreement in that case contained a provision requiring the agreement to continue in full force and effect until an arbitration decision was reached. *Id.* The Fifth Circuit reasoned that the bargained-for provision clearly contemplated that the status quo would continue pending arbitration and injunctive relief was therefore appropriate to prevent one of the parties from terminating the contract. *Id.*

The majority of other federal circuits that have addressed this issue have held that a district court may enter injunctive relief to preserve the status quo pending arbitration. *See, e.g., Toyo Tire Holdings of Americas Inc. v. Cont'l Gen. Tire N. Am. Inc.*, 609 F.3d 975, 980–81 (9th Cir. 2010); *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1380 (6th Cir. 1995); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 214 (7th Cir. 1993); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1052 (2d Cir. 1990); *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 812 (3d Cir. 1989); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*, 844 F.2d 726, 726-28 (10th Cir. 1988); *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir. 1986); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1051-54 (4th Cir. 1985); *Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of N.Y.*, 749 F.2d 124, 125 (2nd Cir. 1984); *Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348 (7th Cir. 1983); *but see Peabody Coalsales Co. v. Tampa Elec. Co.*, 36 F.3d 46, 47–48 (8th Cir. 1994) (holding that the court may issue injunctive relief in arbitrable dispute only if contract contains "qualifying language" that permits such relief and only if such relief can be granted without addressing the merits).

Recent Texas district court analysis follows suit. *Amegy Bank N.A. v. Monarch Flight II, LLC*, 870 F. Supp. 2d 441, __ (S.D. Tex. 2012).

The Texas cases that have considered whether or not a trial court can issue injunctive relief pending arbitration are in conflict. Some courts of appeal have applied the exception to the rule as articulated in *RGI* and have held that injunctive relief is only proper if the parties' contract contemplated it. *See, e.g., Metra United Escalante, L.P., v. The Lynd Co.*, 158 S.W.3d 535, 539–40 (Tex. App.—San Antonio 2004, no pet.) (concluding that where the contract at issue contained no express language demonstrating that the parties contemplated court intervention to maintain the status quo, the *RGI* exception was inapplicable and "[w]e therefore follow the general rule applied by federal courts in Texas and conclude that the issuance of a preliminary injunction is not appropriate when the underlying claims are subject to arbitration under the FAA"). Other courts have held that injunctive relief is improper altogether when arbitration is pending. *See, e.g., Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 883 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (acknowledging the split among federal courts but concluding that its precedent in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCollum*, 666 S.W.2d 604, 608 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) and Fifth Circuit precedent compel the conclusion that injunctive relief is improper pending arbitration). Some courts have held that injunctive relief is entirely proper. *See, e.g., Senter Invs., L.L.C. v. Veerjee*, 358 S.W.3d 841, 845 (Tex. App.—Dallas 2012, no pet.); *Structured Capital Res. Corp. v. Arctic Cold Storage, LLC*, 237 S.W.3d 890, 895 (Tex. App.—Tyler 2007, no pet.).

We conclude that, under the FAA, the trial court may enter injunctive relief to preserve the status quo pending arbitration. As stated previously, this determination is

9

supported by the majority of federal circuits that have considered this issue and current Texas federal district court analysis. Moreover, this determination is congruent with the Texas Arbitration Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.086(a) (West 2011) (allowing for a court to enter orders restraining or enjoining the destruction of all or an essential part of the subject matter to be arbitrated). This position also comports with the concept that courts may issue other orders pending arbitration. *See, e.g., CMH Homes v. Perez*, 340 S.W.3d 444, 450 n.4 (Tex. 2011) (stating that a stay, rather than dismissal, is appropriate for a state court following a determination that a matter should be arbitrated because "a court order may be needed to replace an arbitrator, compel attendance of witnesses, or direct arbitrators to proceed promptly"). Holding otherwise could render arbitration meaningless if parties are able to alter the status quo before arbitrators are able to address the merits of a dispute.

In this case, the temporary injunction was issued in support of arbitration to preserve the status quo and the meaningfulness of the arbitration process. Accordingly, we overrule Frontera's first issue.

## C. PROBABLE RIGHT OF RECOVERY

By its second issue, Frontera contends that the trial court erred by entering a temporary injunction based on legally and factually insufficient evidence of a probable right of recovery. In examining this issue, we emphasize that a ruling on a temporary injunction is not a ruling on the merits, but rather a determination regarding whether the applicant has shown a probable right to relief and a probable, imminent, and irreparable injury in the interim. *See Dallas/Fort Worth Int'l Airport Bd. v. Ass'n of Taxicab Operators, USA*, 335 S.W.3d 361, 364–65 (Tex. App.—Dallas 2010, no pet.).

10

The First Court of Appeals recently addressed the difficulties inherent in applying the requirement that a temporary injunction be supported by a probable right to recovery:

> We recognize that courts are often particularly careful when it comes to the element of "probable right of recovery," sometimes referred to as "likelihood of success on the merits," because, by its plain language, this element seems to infringe upon two well-engrained judicial prohibitions: against advisory opinions and against forming opinions about the merits of the case before the conclusion of the evidence. But the phrase "probable right of recovery" is a term of art in the injunction context. To show a probable right to recover, an applicant need not show that it will prevail at trial. Nor does a finding of probable right of recovery indicate a trial court's evaluation of the probability that the applicant will prevail at trial. Consequently, a finding of probable right to recover has no precedential effect on the case at the trial stage.
>
> Instead, to show a probable right of recovery, the applicant must plead a cause of action and present some evidence that tends to sustain it. The evidence must be sufficient to raise "a bona fide issue [] as to [the applicant's] right to ultimate relief."

*Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (internal citations omitted). Accordingly, in examining this issue, we apply the foregoing standard of review and do not interfere with the ultimate discretion that will be vested in the arbitration proceeding.

In the instant case, Mission sought a declaratory judgment that it did not breach the contracts with Frontera and alleged a cause of action for breach of contract against Frontera. Jerry Dearing, the president of Mission, testified that Frontera abandoned the Mission system, this abandonment caused TETCO and TGP to deactivate the meters and remove their equipment, and TETCO and TGP's actions were not within Mission's control. Further, the agreements between the parties required Frontera to pay a monthly Base Transportation Charge payment, and Frontera ceased making this payment in October 2011. Without addressing the merits of these contentions, we

11

conclude that the evidence presented in the record is sufficient to raise a bona fide issue as to Mission's right to ultimate relief. *See id.* We overrule Frontera's second issue.

### D. PROBABLE, IMMINENT, AND IRREPARABLE INJURY

In its third issue, Frontera contends that the trial court erred by entering a temporary injunction based on legally and factually insufficient evidence of a probable, imminent, and irreparable injury. An injury is irreparable if the injured party cannot be compensated adequately in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W. 3d at 204. To demonstrate probable injury or harm, an applicant must show an injury for which there can be no real legal measure of damages or none that can be determined with a sufficient degree of certainty. *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 925-26 (Tex. App.—Dallas 2006, no pet.).

In this case, Frontera alleged that Mission breached its agreement and sought to foreclose on all of Mission's property, both real and personal, including the Mission system. The foreclosure sale was scheduled within approximately one month after demand and was scheduled for a specific, imminent date. Dearing testified that Mission would not have any assets after the sale and the foreclosure sale would "dissolve the company." In Texas, the potential loss of rights in real property is a probable, imminent, and irreparable injury that qualifies a party for a temporary injunction. *Rus-Ann Dev., Inc. v. ECGC, Inc.*, 222 S.W.3d 921, 927 (Tex. App.—Tyler 2007, no pet.); *Franklin Savs. Ass'n v. Reese*, 756 S.W.2d 14, 15-16 (Tex. App.—Austin 1988, no writ) (op. on reh'g). Viewing the evidence in the light most favorable to the trial court's order, *see James v. Easton*, 368 S.W.3d 799, 805 (Tex. App.—Houston [14th Dist.] 2012, pet.

12

denied), we hold that the trial court reasonably could have concluded that Mission established that it faced probable, imminent, and irreparable injury in the absence of a temporary injunction. Accordingly, we overrule Frontera's third issue.[2]

### III. MANDAMUS IN CAUSE NO. 13-12-00321-CV

By original proceeding, Frontera raises three issues contending the trial court abused its discretion by entering an order that effectively compels it to arbitration with Mission because: (1) Mission failed to make an adequate record of the existence of a valid and enforceable arbitration agreement and an arbitrable issue; (2) Mission failed to plead for such relief; and (3) another district court has dominant jurisdiction over the dispute. The Court requested and received a response to the petition for writ of mandamus from Mission, and further received a reply thereto from Frontera.

### A. STANDARD OF REVIEW

An order compelling arbitration and staying proceedings in district court is not subject to interlocutory appeal under either the federal or state arbitration schemes. *See Chambers v. O'Quinn*, 242 S.W.3d 30, 31–32 (Tex. 2007) (per curiam); *Labidi v. Sydow*, 287 S.W.3d 922, 926 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (combined appeal & orig. proceeding); *see also* 9 U.S.C. § 16(a) (specifying which orders under the FAA are subject to appeal); TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a) (West 2008) (omitting orders compelling arbitration from delineated categories of appealable interlocutory orders); TEX. CIV. PRAC. & REM. CODE ANN. §

---

[2] By a supplemental brief filed in this matter, Mission contends that Frontera has waived its argument regarding the trial court's alleged lack of authority to grant injunctive relief because, after Frontera filed its brief in this cause, it sought and obtained a stay of the arbitration from the trial court. Mission contends that an order staying arbitration equates to a temporary injunction and thus, Frontera has explicitly acknowledged the trial court's authority to grant injunctive relief. Mission cites no authority supporting the proposition that Frontera's actions in seeking a stay of arbitration waived its appellate issues concerning the temporary injunction in this cause. We have overruled Frontera's appellate issues and need not address the issue of waiver. *See* TEX. R. APP. P. 47.1

51.016 (West Supp. 2011) (providing that a party may appeal from a "judgment or interlocutory order . . . under the same circumstances that an appeal from a federal district court's order or decision would be permitted by" the FAA); TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1), (2)  (West 2008) (specifying which orders under the Texas Arbitration Act are subject to appeal).  Instead, orders compelling arbitration and staying litigation are subject to appeal after the rendition of final judgment.  *See Perry Homes v. Cull*, 258 S.W.3d 580, 587 (Tex. 2008); *Chambers*, 242 S.W.3d at 32.

Mandamus is an "extraordinary" remedy.  *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding); *see In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding).  To obtain mandamus relief, the relator must show that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal.  *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *see In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462 (Tex. 2008) (orig. proceeding).  A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law.  *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).  To satisfy the clear abuse of discretion standard, the relator must show that the trial court could "reasonably have reached only one decision."  *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (quoting *Walker*, 827 S.W.2d at 840).

Historically, mandamus was treated as an extraordinary writ that would issue "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies."  *Walker*, 827 S.W.2d at 840.  Now, whether a

14

clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of the costs and benefits of interlocutory review. *See In re McAllen Med. Ctr., Inc.*, 275 S.W.3d at 462. "An appellate remedy is 'adequate' when any benefits to mandamus review are outweighed by the detriments." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. According to the Texas Supreme Court:

> Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.

*Id.*

## B. ANALYSIS

As an initial matter, we note that this case comes to us with a rather unique procedural posture. Specifically, we are being asked to determine whether or not the trial court abused its discretion in "effectively" compelling Frontera to arbitration without a record pertaining to the arbitrability of this case. According to the record provided, Mission has filed a complaint in arbitration, but has not filed a motion to compel arbitration, and Frontera has not filed a response contesting arbitration. The matter has not been fully litigated. Based on the pleadings before us in these two causes, it appears that Frontera seeks to utilize the fact that arbitration is pending to argue that the trial court erred in issuing the temporary injunction, but, inconsistently, seeks to avoid the arbitration. In short, Frontera has not asked the trial court to determine that the dispute is not arbitrable. As a general rule, mandamus will not issue to compel an action that has not first been demanded and refused. *See In re Perritt*, 992 S.W.2d 444, 446 (Tex. 1999) (orig. proceeding); *Terrazas v. Ramirez*, 829 S.W.2d 712, 723 (Tex.

15

1991) (orig. proceeding). Accordingly, we reject Frontera's contention that the trial court erred in "effectively" compelling arbitration.

We would obtain the same result in an analysis on the merits. Under previous law, mandamus was available to review orders either compelling or denying arbitration under the FAA Act. *See Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994). However, in 2006, in order to ensure consistency between federal and state procedures, the Texas Supreme Court held that mandamus was generally not available to review orders compelling arbitration so that federal and state procedure would be consistent. *See In re Palacios*, 221 S.W.3d 564, 565 (Tex. 2006) (orig. proceeding). In *Palacios*, the Texas Supreme Court noted that mandamus relief might be available, but only if the party seeking relief from an order staying a case for arbitration meets the "particularly heavy" burden to show "clearly and indisputably that the district court did not have the discretion to stay the proceedings pending arbitration." *Id.* (quoting *Apache Bohai Corp. v. Texaco China, B.V.*, 330 F.3d 307, 310–11 (5th Cir. 2003)). The Texas Supreme Court has reaffirmed this proposition and clarified that "this 'exception' applies not to the question whether an order compelling arbitration was correct, but to the question whether the case should have been dismissed rather than stayed." *In re Gulf Exploration, LLC*, 289 S.W.3d 836, 841 (Tex. 2009) (orig. proceeding); *see Small v. Specialty Contrs., Inc.*, 310 S.W.3d 639, 642 (Tex. App.–Dallas 2010, no pet.) ("Courts may review an order compelling arbitration if the order also dismisses the entire case and is therefore a final, rather than interlocutory, order.").

Moreover, even if a case falls within the foregoing parameters for mandamus review, mandamus is nonetheless "generally unavailable" because petitioners can "rarely" show that they lack an adequate remedy by appeal. *See In re Gulf Exploration,*

16

*LLC,* 289 S.W.3d at 842. Generally, the adequacy of an appellate remedy "depends on a careful balance of the case-specific benefits and detriments of delaying or interrupting a particular proceeding"; however, because both the federal and state arbitration acts specifically exclude immediate review of orders compelling arbitration, "any balancing must tilt strongly against mandamus review." *Id.* Nevertheless, mandamus review may be appropriate "in those rare cases when legislative mandates conflict." *Id.* According to the supreme court, "such conflicts are few, so the balance will generally tilt toward reviewing orders compelling arbitration only on final appeal." *Id.* In such cases, "mandamus may be essential to preserve important substantive and procedural rights from impairment or loss [and] allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments." *Id.* at 843 (quoting *In re Prudential Ins. Co.*, 148 S.W.3d at 136). The court further noted that delay and expense, standing alone, generally do not render appeal after a final judgment to be an inadequate remedy, and this is particularly true in arbitration cases "because arbitration clauses are usually contractual and cover contractual claims," and a "party that prevails on a contractual claim can recover its fees and expenses, even if they were incurred in collateral proceedings like arbitration." *Id.* (citations omitted).

In the instant case, Frontera alleges that it lacks an adequate remedy by appeal because the order compelling arbitration "places Frontera at high risk of having to shut down its plant in the event of any interruption from its primary supplier of natural gas," so that it is at risk for economic harm and "places regional businesses and citizens at risk of being without electricity." In contrast, Mission contends that the order at issue is

17

not really an order compelling arbitration, but is more appropriately reviewed as a temporary injunction, which is not subject to mandamus review.

Because both the federal and state arbitration acts specifically exclude immediate review of orders compelling arbitration, our analysis regarding the adequacy of a remedy by appeal "tilts strongly against mandamus review." *See In re Gulf Exploration, LLC*, 289 S.W.3d at 842. This matter does not involve conflicting legislative mandates. *See id.* at 843. Delay and expense, standing alone, generally do not render appeal after a final judgment to be an inadequate remedy, and this is particularly true in this case because it is, at least in part, based on a contractual dispute, and a "party that prevails on a contractual claim can recover its fees and expenses, even if they were incurred in collateral proceedings like arbitration." *See id.* In sum, Frontera has not carried its burden to show that it lacks an adequate remedy by appeal. *Compare id. and Abdel Hakim Labidi*, 287 S.W.3d at 926 (concluding that there was an adequate remedy by appeal for an order compelling arbitration where clients sued their lawyers for breach of contract and breach of fiduciary duty), *with In re Sthran*, 327 S.W.3d 839, 846 (Tex. App.—Dallas 2010, orig. proceeding) (concluding that relator lacked an adequate remedy by appeal where "legislative mandates might be construed to conflict" and it was "not clear that any fees and expenses incurred as a result of arbitration [would] be recoverable" in a tort action), *and In re Villanueva*, 311 S.W.3d 475, 483–84 (Tex. App.—El Paso 2009, orig. proceeding) (concluding that relator lacked an adequate remedy by appeal where relator would not be able to recover fees and expenses in tort action and, more compellingly, because the case involved "conflicting rulings" which were "significant rulings in exceptional cases"). In this regard, we note that the Mission system has been inoperable for an extended period of time and all of

18

the damages that Frontera asserts that it might incur if this issue is reviewed by appeal rather than mandamus are speculative and conclusory. Accordingly, we deny the petition for writ of mandamus.

## IV. CONCLUSION

As stated herein, we affirm the injunction in cause number 13-12-00265-CV and we deny the petition for writ of mandamus in cause number 13-12-00321-CV.

_____
Rogelio Valdez
Chief Justice

Delivered and filed the
28th day of December, 2012.